The Honorable Morril Harriman State Senator 522 Main Van Buren, AR 72956
Dear Senator Harriman:
You have requested an Attorney General opinion concerning the apportionment of county road tax revenues and concerning the payment of reappraisal expenses.
You indicate that the incorporated town of Cedarville, Arkansas, which is located within Crawford County, incorporated in October of 1998. There was no levy of millage for the taxable year of 1998 (which would have been collectable in 1999). In 1999, Cedarville voted not to levy a general millage for maintenance and operation for the year 1999 (which would be collected in 2000). You also indicate that Crawford County is conducting a countywide reappraisal.
In light of the foregoing, you have asked:
 (1) Is Cedarville to receive 1.5 mills of the road millage within the incorporated area?
 (2) Is Cedarville required to reimburse the county for any reappraisal costs, since the city did not levy a general millage?
 (3) If the answer to Question 2 is yes, is Cedarville required to reimburse the county for any reappraisal costs pertaining to the road millage?
 (4) If Cedarville is required to reimburse the county for reappraisal costs, how much and when is the city to reimburse the county?
RESPONSE
Question 1 — Is Cedarville to receive 1.5 mills of the road millagewithin the incorporated area?
It is my opinion that Cedarville must receive one-half of the road tax millage that was collected upon property located within the Cedarville corporate limits after the date on which Cedarville was incorporated.
This issue is governed by A.C.A. § 26-79-104, which states:
 (a) Of the amount collected from the annual three mill road tax in any county in the state, the county courts shall apportion one-half (1/2), except where a greater amount is allowed by law, of the amount collected upon property within the corporate limits of any city or town for use in making and repairing the streets and bridges in the respective cities or towns.
 (b) The collector of any county in the state shall pay into the treasury of the respective cities or towns the amount so apportioned by the county court, which amount shall be expended exclusively by the cities or towns for the purpose of making and repairing the streets and bridges within the corporate limits of the town or city.
 (c) This section shall not repeal, alter, change, or affect any special act passed under which any city or town is receiving any greater or lesser amount than the three mill county road tax.
A.C.A. § 26-79-104.
This provision does not condition apportionment of road tax revenues upon the city having levied a millage for maintenance and operation. Rather, it unambiguously provides for this apportionment to the cities if tax funds were collected upon property within corporate limits. Moreover, this requirement is mandatory, making use of the mandatory term "shall."See, e.g., Singleton v. State, 337 Ark. 503, 989 S.W.2d 533 (1999) (Stating that the term "shall," when used in statutory language, usually indicates a legislative intent that the provision be mandatory.) I note, however, that the reference in the language of the statute to "corporate limits" indicates that the cities are not entitled to receive amounts collected upon property now located within corporate limits during a time period before incorporation.
Accordingly, I conclude that Cedarville must receive one-half of the road tax revenues that were collected upon property located within its corporate limits after the date of its incorporation.
Question 2 — Is Cedarville required to reimburse the county for anyreappraisal costs, since the city did not levy a general millage?
It is my opinion that Cedarville is not required to reimburse the county for any reappraisal costs incurred in the course of the countywide reappraisal. It is my opinion further, as explained more fully below, that if the reappraisal costs exceed the limit created by the Assessment Coordination Department, Cedarville will only be required to reimburse the county its pro rata share of the excess if taxes have been collected for its benefit and placed in its general fund.
County-wide reappraisals are governed by Act 1185 of 1999, which is codified at A.C.A. § 26-26-1901 et seq.[1] That Act created the "Arkansas Real Property Reappraisal Fund." A.C.A. § 19-5-1096. The Act states in pertinent part:
 (a) The proceeds of the Arkansas Real Property Reappraisal Fund shall be used to pay counties and professional reappraisal companies for the reappraisal of real property required by this subchapter and shall be in lieu of real property reappraisal funding by the local taxing units in each county of this state.
A.C.A. § 26-26-1907(a) (emphasis added).
The Rules and Regulations of the Assessment Coordination Department (ACD) place a limit on the amount to be paid out of the Fund for appraisal costs. The Fund will pay up to $7.00 per parcel per year for appraisal costs. See Rule 3.14 of the Rules and Regulations of the Assessment Coordination Department. If the county has incurred reappraisal costs in excess of the ACD's limitation, that excess will not be reimbursed from the Fund, but rather will be reimbursable from the various taxing units in the county.
If such reimbursement from the taxing units is necessary, it will be governed by the provisions of A.C.A. § 14-15-203.[2] That statute provides that the taxing units within the county are to reimburse the county for reappraisal costs, as follows:
 (b)(1) For the purpose of carrying out this policy, the amount so to be contributed annually by each of the taxing units shall be in the proportion that the total of such taxes collected for the benefit of each taxing unit bears to the total of taxes collected for the benefit of all taxing units.
 (2) The pro rata contribution of the salaries and expenses of any taxing unit which receives taxes collected for the purpose of meeting debt service requirements of its issued and outstanding bonds shall be charged to and paid out of the taxing unit's general fund, and not to, or out of, any special fund it may maintain for this purpose, nor in such other manner as will diminish the amount necessary to meet such debt service requirements.
A.C.A. § 14-15-203(b).
Under the above-quoted statute, a city's pro rata contribution for reappraisal costs must come from the city's general fund, and not from special funds. If no taxes have been collected for the benefit of a city and placed in its general fund, that city cannot be required to contribute to reappraisal costs. I note that although the road tax is collected in part for the benefit of the cities, those tax revenues are placed in a special fund and cannot be used for any purpose other than the construction and repair of roads and bridges. See Arkansas Constitution, Am. 61.
For these reasons, I conclude that if no taxes have been collected for the benefit of the town of Cedarville and placed in its general fund, it cannot be required to reimburse the county for any excess reappraisal costs. If taxes are collected for the benefit of Cedarville and placed in its general fund prior to the conclusion of the county-wide reappraisal, Cedarville will then be required to reimburse the county its pro rata share of costs in excess of the amount payable from the Arkansas Real Property Reappraisal Fund.
Question 3 — If the answer to Question 2 is yes, is Cedarville requiredto reimburse the county for any reappraisal costs pertaining to the roadmillage?
Because I have opined that Cedarville is not required to reimburse the county for reappraisal costs, this question is moot.
Question 4 — If Cedarville is required to reimburse the county forreappraisal costs, how much and when is the city to reimburse thecounty?
Again, because I have opined that Cedarville is not required to reimburse the county for reappraisal costs, this question is also moot.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which
I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] The effective date of Act 1185 was April 7, 1999. Your question appears to pertain to a time period after the effective date of Act 1185. However, if your question was intended to pertain to a time period prior to the effective date of Act 1185, my ultimate answer to this question would not change, although my reasoning would be based in whole (rather than in part, as it is herein) upon A.C.A. § 14-15-203, which exempts cities from reimbursement requirements if no taxes have been collected and placed in their general funds.
[2] It should be noted that if the reappraisal in question had been conducted pursuant to a contract for which the town of Cedarville had petitioned, the reimbursement would be governed by A.C.A. § 26-26-604, which states in pertinent part:
 (2)(A) The general fund of the county shall be reimbursed by transfer to it from the funds of the respective taxing units embraced in the appraisal contract, and the amount to be contributed by each taxing unit shall be in the proportion that the total of the ad valorem taxes collected for the benefit of each taxing unit bears to the total of the ad valorem taxes collected for the benefit of all taxing units during the collection period next following completion of the appraisal.
 (B) No contribution for the purpose of making reimbursement to the county general fund shall be made by any taxing unit of the county which did not join in the original petition for appraisal.
Accordingly, if Cedarville had signed a petition for the appraisal contract in question it could be required to reimburse the county its pro rata share calculated upon the basis of the amount of the ad valorem taxes, if any, that were collected for its benefit.